## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

**EXSON DOLMO MARTINEZ**                    **CIVIL ACTION NO. 25-1780 SEC P**

**VERSUS**                                          **JUDGE EDWARDS**

**SHAD RICE ET AL**                              **MAGISTRATE JUDGE PEREZ-MONTES**

### MEMORANDUM RULING

On November 26, 2025, the Court granted the Motion for Temporary Restraining Order ("TRO") (R. Doc. 13) filed by Exson Dolmo Martinez ("Petitioner") and informed the parties that this written ruling would follow.

### BACKGROUND[1]

Petitioner, a citizen of Honduras,[2] entered the United States in October of 2019 as an unaccompanied minor.[3] Upon arrival, he was taken into custody by the Office of Refugee Resettlement.[4] He was later released to his mother on recognizance.[5] He is now 20 years old and has no criminal convictions.[6]

On September 4, 2025, the Department of Homeland Security ("DHS") arrested Petitioner in New Orleans, Louisiana, while he was visiting family.[7] He was transferred to the Central Louisiana ICE Processing Center in Jena, Louisiana, where he remains detained.[8] DHS served Petitioner with a Notice to Appear,

---

[1] The facts below are taken from Petitioner's Habeas Petition and his Motion.
[2] R. Doc. 1 at 5.
[3] *See* R. Doc. 2-1 at 7.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

charging him with removability as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.[9]

On September 15, 2025, a state court found that Petitioner had been abandoned by his parents and granted custody of Petitioner to Brother Michael Gosch of the Mercy Home in Chicago, Illinois.[10] Based on this finding, Petitioner applied for Special Immigrant Juvenile Status with the United States Citizenship and Immigration Services.[11] This application is pending.[12]

On October 8, 2025, an immigration judge denied Petitioner's request for bond, concluding that the immigration court lacked jurisdiction to consider bond under 8 U.S.C. § 1225(b)(2)(A).[13] On November 14, 2025, Petitioner filed the instant motion for TRO requesting his release or, in the alternative, that he receive an individualized bond hearing.[14] Petitioner argues that his detention is governed by 8 U.S.C. § 1226(a), which provides for discretionary bond, rather than 8 U.S.C. § 1225(b)'s mandatory detention provisions.[15]

---

[9] *See* R. Doc. 1-3; 8 U.S.C. § 1182(a)(6)(A)(i).

[10] R. Doc. 1 at 2.

[11] R. Doc. 2-1 at 7; *see* R. Doc. 1-4. Special Immigrant Juvenile Status is a form of humanitarian relief for individuals under 21 years of age who have been abandoned, abused, or neglected by one or both parents. 8 U.S.C. §§ 1101(a)(27)(J), 1255(a), (h).

[12] R. Doc. 2-1 at 7.

[13] *See* R. Doc. 1-5 at 1; INA § 235(b)(2)(A).

[14] *See* R. Doc. 2 at 1.

[15] *See* R. Doc. 2-1 at 10.

## LAW AND ANALYSIS

### I.    Jurisdiction

Respondents challenge this Court's jurisdiction under 8 U.S.C. § 1252—an issue we must decide first.[16] Respondents argue that this Court lacks jurisdiction over Petitioner's motion because his request is a "collateral attack on [his] removal proceedings."[17] Respondents contend that § 1252(b)(9) precludes this Court's review.[18] Incorrect. § 1252(b)(9) relates to "questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States…." In deciding "whether … certain statutory provisions require[d] detention without a bond hearing[,]" the plurality opinion in *Jennings v. Rodriguez* held that § 1252(b)(9) did not bar review of a habeas petitioner's challenge to mandatory detention under § 1225(b).[19] The *Jennings* Court further concluded that an expansive interpretation of § 1252(b)(9), like the one that Respondents ask this Court to adopt, would make claims—such as claims for a bond hearing—effectively unreviewable.[20] Because

---

[16] *See Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024); *See Martinez v. Trump*, 2025 WL 3124847, at *1 (W.D. La. Oct. 22, 2025) (internal citations omitted).

[17] *See* R. Doc. 10 at 21.

[18] *See* R. Doc. 10 at 21.

[19] *Jennings v. Rodriguez*, 583 U.S. 281, 292–93 (2018) (holding that an "expansive interpretation of § 1252(b)(9) would lead to staggering results").

[20] *Id.* at 294–95 (2018); *see also Martinez*, 2025 WL 3124847, *2 (holding that § 1252(b)(9) is inapplicable to "a dispute over the availability of bond"); *see also Miguel v. Noem*, 2025 WL 2976480, *3 (N.D. Ill. Oct. 21, 2025) (holding that stripping a court's jurisdiction would effectively make claims "unreviewable because by the time the final order was entered, the opportunity for a bond hearing would have already passed"); *see also Delcid v. Noem*, 2025 WL 3251139, at *3 (W.D. Mich. Nov. 21, 2025) (concluding "that § 1252(b)(9) does not divest" a court's jurisdiction to review a petitioner's challenge to their "entitlement to a bond hearing").

Petitioner in this case is seeking "an individualized bond hearing," § 1252(b)(9) does not divest this Court's jurisdiction.[21]

Respondents also argue that "Section 1252(g) is equally categorical" as it bars a court's jurisdiction over any cause or claim regarding the Government's decision "to commence proceedings, adjudicate cases, or execute removal orders against any alien."[22] This argument also fails. The Supreme Court has previously dispensed with Respondents' argument as "implausible" since § 1252(g) is limited to decisions "to commence proceedings, adjudicate cases, or execute removal orders" and does not impose "a general jurisdictional limitation."[23] The Fifth Circuit has confirmed that § 1252(g) only applies  to "the Attorney General's discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders."[24] Here, Petitioner's request for an individualized bond hearing is not a decision to commence removal proceedings, adjudicate his case, or execute his removal order. Since Petitioner is not challenging a discretionary decision of the Attorney General in the prosecution, adjudication, or execution of a removal order, this Court's review is not precluded by § 1252(g).[25]

---

[21] *See Rodriguez v. Bostock*, 2025 WL 2782499, at *10 (W.D. Wash., Sept. 30, 2025) (citing *Jennings*, 583 U.S. at 291–92 ("[T]he Supreme Court has directly considered and rejected the argument that section 1252(b)(9) bars review of legal questions concerning the detention provision of sections 1225 and 1226.").

[22] *See* R. Doc. 10 at 21–22.

[23] *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *Reno v. American-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999)); *see* 8 U.S.C. § 1252(g).

[24] *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999)).

[25] *See Guerrero Orellana v. Moniz*, 2025 WL 2809996, at *4 (D. Mass. Oct. 3, 2025) (holding that § 1252(g) did not apply to challenge of prolonged detention without a bond hearing).

## II.     Whether a TRO Should be Issued

An applicant for a Temporary Restraining Order must demonstrate each of the following: (1) a substantial likelihood his cause will succeed on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm the injunction may do to the opposing party, and (4) granting the injunction will not disserve the public interest.[26] Elements three and four merge "when the Government is the opposing party."[27] The decision of whether to grant or deny a Temporary Restraining Order lies in the district court's discretion.[28]

### A.  Likelihood of Success on the Merits

Petitioner argues that 8 U.S.C. § 1226 governs his detention and affords him a bond hearing.[29]  He asserts that, to be detained under § 1225(b) as the Government contends, an alien must be detained at a port of entry or border.[30]  As the Government is detaining Petitioner under the mandatory provisions of § 1225(b), Petitioner claims that his detention is unlawful.[31]  Respondents take the position that Petitioner is "an alien present in the United States who has not been admitted. Consequently, he is deemed an applicant for admission subject to mandatory detention requirements of section 1225."[32]

---

[26] *See Misquitta v. Warden Pine Prairie ICE Processing Center*, 353 F. Supp. 3d 518, 521 (W.D. La. Nov. 16, 2018) (citing *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430 (5th Cir. 1981)).
[27] *Nken v. Holder*, 556 U.S. 418, 435–36 (2009).
[28] *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017).
[29] *See* R. Doc. 2-1 at 9.
[30] *See id*.
[31] *See* R. Doc. 2-1 at 7, 9
[32] *See* R. Doc. 10 at 14.

To begin, Judge Rodriguez in the Western District of Texas recently pointed out that "[t]his is not a matter of first impression. In recent months, courts across the country … have rejected Respondents' broad interpretation of Section 1225(b)(2)."[33] "These opinions rely on several rationales, from statutory language and context to legislative history and longstanding agency practice."[34] This Court agrees with Judge Rodriguez that the opinions of these courts across the country are "generally persuasive and [this Court] will not restate every rationale therein."[35] Instead, this Court will address the two reasons that undercut the Government's position: the statutory language of § 1225(b)(2) and the Supreme Court's analysis of §§ 1225(b) and 1226(a) in *Jennings*.[36]

The Court's analysis begins with the statutory text and its plain meaning.[37] Section 1225(b)(2) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings.[38] Under § 1225(b)(2), detention is required if "(1) the person is an 'applicant for admission'; (2) the person is 'seeking admission';

---

[33] *Granados v. Noem*, 2025 WL 3296314, at *5 (W.D. Tex. Nov. 26, 2025) (collecting cases).

[34] *Id.* (collecting cases).

[35] *Id.* at *6 (citing *Buenrostro-Mendez v. Bondi*, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement.")).

[36] *Id.*

[37] *Quinapanta v. Bondi*, 2025 WL 3157867, at *4 (W.D. Wis. Nov. 12, 2025) ("As with all questions of statutory interpretation, [courts must] start with the text of the statute to ascertain its plain meaning.") (citation modified).

[38] 8 U.S.C. § 1225(b)(2)(A).

and (3) an 'examining immigration officer determines' the person 'is not clearly and beyond a doubt entitled to be admitted.'"[39]

As recognized by Judge Rodriguez, the key terms in § 1225(b)(2)(A) that direct this Court's analysis are defined in statute:

> The term "applicant for admission" includes a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id*. § 1101(a)(13)(A).[40]

The statutory definitions of these terms and their plain meaning are dispositive here. "Admission" means lawful entry. Petitioner was not applicant for admission when he was detained by ICE officials on September 4, 2025, because he was not seeking lawful entry into the United States at that time. Rather, Petitioner had been residing within the United States for nearly six years.

This conclusion is further supported by the majority of courts—including this very Court—that have concluded that detention for aliens already present in the United States is governed by § 1226(a), entitling them to an individualized bond hearing.[41]

---

[39] *Granados*, 2025 WL 3296314, at *6 (citing 8 U.S.C. § 1225(b)(2)(A); *Lopez Benitez v. Francis*, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025)).

[40] *Id*.

[41] *See, e.g.*, *Kostak v. Trump*, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *Garcia v. Noem*, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025); *Jimenez v. FCI Berlin, Warden*, 2025 WL 2639390, at **3–10 (D.N.H. Sept. 8, 2025); *Lopez Santos v. Noem*, 2025 WL 2642278, at *4 (W.D. La. Sept. 11, 2025); *Hasan v. Crawford*, 2025 WL 2682255, **5–6 (E.D. Va. Sept. 19, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *5 (N.D. Iowa Sept. 23, 2025); *Lopez v. Hardin*, 2025 WL 2732717, at *2 (M.D. Fla. Sept. 25, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at **5–6 (D. Minn. Oct. 1, 2025); *Martinez*, 2025 WL 3124847, at **2–3; *Valerio v. Joyce*, 2025 WL 3251445, at *3 (D.N.J. Nov. 21, 2025); *Elias v. Noem*, 2025 WL 3228262, at **5–7 (D. Idaho Nov. 19, 2025).

Respondents ask this Court to abandon our approach in prior cases and the majority approach.[42] Respondents contend, *inter alia*, that Petitioners have "provide[d] no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer seeking admission, and has somehow converted to a status that renders [Petitioner] eligible for a bond hearing...."[43] But this Court, on two occasions, has provided the authority that Petitioner relies on—and that Respondents claim does not exist.[44]

Respondents maintain that Petitioner "is deemed an application for admission subject to mandatory detention requirements of section 1225."[45] The Court disagrees. The vast majority of courts throughout the country disagree. Based on this Court's reading of *Jennings*, it also appears that the Supreme Court disagrees. In fact, the Supreme Court interpreted §§ 1225(b) and 1226(a) holistically, contrary to Respondents' assertion. The *Jennings* Court understood § 1225(b) to control the detention of aliens "at the Nation's borders and ports of entry."[46] The Supreme Court's "language does not indicate broad application to all unadmitted immigrants in the United States. Rather ... this language indicates that § 1225(b)(2) applies to those arriving in the country."[47] The *Jennings* Court distinguished §§ 1225(b) and 1226(a)

---

[42] *See* R. Doc. 10 at 15.

[43] *See id.* at 14 (citation modified).

[44] *See Kostak*, 2025 WL 2472136, at **2–3; *see Martinez*, 2025 WL 3124847, **2–3; *see also* R. Doc. 7-1 at 7, 17; *see also* R. Doc. 10 at 14.

[45] *See* R. Doc. 10 at 14.

[46] *Jennings*, 583 U.S. at 287.

[47] *Morales Chaves v. Dir. of Detroit Field Off.*, 2025 WL 3187080, at *5 (citing *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *7 (E.D. Mich. 2025).

to ensure that these sections would function in concert, not in conflict.[48] This Court will neither create such a conflict nor render § 1226(a) without effect.

Respondents lastly cite authorities from courts holding that § 1225(b) governs Petitioner's detention.[49] Having reviewed and considered all of the cited authorities, the Court finds these decisions unpersuasive.

The Court finds that Petitioner is likely to succeed on the merits of his claim that he is unlawfully detained and unlawfully determined to be ineligible for a bond hearing under § 1225(b)(2). It is undisputed that Petitioner was present within the United States, not at a port of entry or border of the United States, and not seeking lawful entry, when he was detained on September 4, 2025.[50] Accordingly, "Respondents' invocation of § 1225(b) as applied to Petitioner is inconsistent [with] the statutory framework distinguishing between entry-based and interior detention authority."[51] Because Petitioner resided within the United States when detained on September 4, 2025, § 1226(a)—not § 1225(b)—governs Petitioner's detention and requires that Petitioner receive a bond hearing.[52]

### B. Imminent Risk of Irreparable Harm

The Fifth Circuit has recognized that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of

---

[48] *See Jennings*, 583 U.S. at 289.

[49] *See* R. Doc. 10 at 16–17.

[50] *See* R. Doc. 2-1 at 7; *see generally* R. Doc. 10 at 7; *see Martinez*, 2025 WL 3124847, at *3 (holding that a noncitizen who has been "present" for thirteen years is not arriving and, thus, whose detention is not governed by § 1225).

[51] *Maldonado v. Cabezas*, 2025 WL 2985256, at *4 (D.N.J. Oct. 23, 2025) (citing *Zumba v. Bondi*, 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025)).

[52] *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

irreparable injury is necessary."[53] Petitioner "faces a period of mandatory detention ... likely in violation of the statutory scheme."[54] The erroneous deprivation of liberty, "for even minimal periods of time, unquestionably constitutes irreparable injury."[55] Accordingly, this factor weighs in Petitioner's favor.

### C. Balance of Equities and the Public Interest

The public has a strong interest in the Government complying with its own laws.[56] "Because the Court has also found it likely that ["Respondents"] [have] unlawfully detained [Petitioner] under Section 1225(b)(2), 'neither equity nor the public's interest are furthered' by detaining [Petitioner] without the opportunity for release on bond."[57] Further, requiring a bond hearing—a consistent practice until late—imposes virtually no burden on Respondents.[58] Accordingly, this factor weighs in Petitioner's favor as well.

Thus, Petitioner satisfies the elements necessary to grant a motion for temporary restraining order requiring Respondents to hold an individualized bond hearing.

**THUS DONE AND SIGNED** in Chambers this 11th day of December, 2025.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[53] *Book People, Inc. v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024).
[54] *See S.D.B.B. v. Johnson*, 2025 WL 2845170, at *10 (M.D.N.C., Oct. 7, 2025).
[55] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).
[56] *See Kostak*, 2025 WL 2472136, at *4 (citing *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. Apr. 17, 2025) ("The public has a vested interest in a federal government that follows its own regulations.")).
[57] *See Rodriguez*, 2025 WL 2782499, at *10 (quoting *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)).
[58] *Guerrero Orellana v. Moniz*, 2025 WL 2809996, at *10 (D. Mass. Oct. 3, 2025).